**U.S. STEEL GROUP (a unit of USX Corporation) and Bethlehem Steel Corporation, Plaintiffs–Appellees,**

v.

**UNITED STATES, Defendant–Appellant,**

and

**AG Der Dillinger Huttenwerke, Defendant.**

No. 99–1342.

United States Court of Appeals, Federal Circuit.

Aug. 25, 2000

Jennifer Danner Riccardi, Dewey Ballentine LLP, of Washington, DC, argued for plaintiffs-appellees. With her on the brief were Michael H. Stein, Bradford L. Ward, and Andrew J. Conrad.

Lucius B. Lau, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellant. On the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Erin E. Powell, Trial Attorney. Of counsel was Bernd G. Janzen, Attorney, Office of the Chief Counsel for Import Administration, Department of Commerce, of Washington, DC.

Before LOURIE, CLEVENGER, and RADER, Circuit Judges.

Opinion for the court filed by Circuit Judge RADER. Dissenting opinion filed by Circuit Judge LOURIE.

RADER, Circuit Judge.

The U.S. Department of Commerce (Commerce) issued the final results of its antidumping duty review of AG der Dillinger Hüttenwerke (Dillinger). *See Certain Cut-To-Length Carbon Steel Plate From Germany: Final Results of Antidumping Duty Administrative Review*, 62 Fed.Reg. 18,390 (Dep't of Commerce 1997) (*Final Results*). In its review, Commerce interpreted 19 U.S.C. § 1677a(f)(2)(C) to include movement expenses as part of "total expenses." *See* 19 U.S.C. § 1677a (1994) ("Act"). The United States Court of International Trade reversed, thus precluding Commerce from including movement expenses in computing "total expenses." *See U.S. Steel Group v. United States*, 15 F.Supp.2d 892, 898 (C.I.T.1998). Because the Court of International Trade did not accord the necessary deference to Commerce's reasonable interpretation of

the statute, this court reverses and remands.

## I.

On April 15, 1997, Commerce issued the *Final Results* of its antidumping duty review of Dillinger. In its review, Commerce classified Dillinger's U.S. sales as Construed Export Prices (CEP) sales, rather than Export Prices (EP) sales, as part of the antidumping determination. *See* 62 Fed.Reg. at 18,392. Accordingly, Commerce adjusted the CEP under 19 U.S.C. § 1677a(d). As part of CEP computation, Commerce applied 19 U.S.C. § 1677a(f) to compute U.S. profit. That computation includes a determination of "total expenses," which the statute defines as "all expenses . . . with respect to the production and sale of [subject] merchandise." 19 U.S.C. § 1677a(f)(2)(C). As Commerce applied the Act, "total expenses" includes movement expenses.

U.S. Steel Group and Bethlehem Steel Corporation (collectively, domestic producers) as well as Dillinger appealed various aspects of the *Final Results* to the Court of International Trade. In particular, the domestic producers challenged Commerce's inclusion of movement expenses in the "total expenses" computation. The domestic producers argued that "total expenses," under § 1677a(f)(2)(C), does not cover movement expenses but only production and selling expenses. In response, Commerce asserted that the overall structure of the statute justified its inclusion of movement expenses in "total expenses." Commerce also urged the Court of International Trade to accord substantial deference to its reasonable statutory interpretation.

On July 7, 1998, the Court of International Trade sustained the domestic producers' challenge. The Court of International Trade seemed to concede that the statute contains an ambiguity: "[T]he language defining total expenses is not entirely clear as to whether movement expenses should be included in the total expenses." *U.S. Steel,* 15 F.Supp.2d at 897. The Court of International Trade, however,

proceeded to decide that the inclusion of "all expenses" within the statutory term "total expenses" might negate the Act's reference to "production and sale" expenses. *See id.*

Despite the apparent ambiguity, the Court of International Trade considered Commerce's interpretation of the statute unreasonable and therefore unworthy of deference. *See id.* at 898. In its opinion, the Court of International Trade found two reasons to reject Commerce's statutory interpretation as unreasonable: "First, Commerce's interpretation is unreasonable because it conflicts with its past practice of consistently distinguishing between movement and production or selling expenses in other circumstances." *Id.* Next, "Commerce incorrectly discounts the proportionality that must logically exist between the total and total U.S. expenses. Total U.S. expenses over total expenses constitutes the applicable percentage. Logically, the numerator and the denominator of this ratio should be drawn from the same pool of expenses." *Id.* (internal citations omitted). Thus, the Court of International Trade remanded the case to Commerce to recalculate the U.S. profit excluding movement expenses from "total expenses."

On September 8, 1998, Commerce submitted its recalculated results consistent with the remand order to the Court of International Trade. In turn, on November 6, 1998, the Court of International Trade issued its final judgment. *See U.S. Steel Group v. United States,* No. 97–05–00866, 1998 WL 782011 (Ct. Int'l Trade Nov. 6, 1998). Commerce appeals.

## II.

This court reviews questions of statutory interpretation without deference. *See Koyo Seiko Co. v. United States,* 36 F.3d 1565, 1570 (Fed.Cir.1994). In reviewing an agency's construction of a statute that it administers, this court addresses two questions outlined by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S.

837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The first question is "whether Congress has directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. 2778. If so, this court and the agency "must give effect to the unambiguously expressed intent of Congress." *Id.* at 843, 104 S.Ct. 2778. If, however, Congress has not spoken directly on the issue, this court addresses the second question of whether the agency's interpretation "is based on a permissible construction of the statute." *Id.*

"To survive judicial scrutiny, an agency's construction need not be the only reasonable interpretation or even the most reasonable interpretation." *Koyo Seiko,* 36 F.3d at 1570. Thus, when faced with more than one reasonable statutory interpretation, "a court must defer to an agency's reasonable interpretation ... even if the court might have preferred another." *NSK Ltd. v. United States,* 115 F.3d 965, 973 (Fed.Cir.1997) (citations omitted). In antidumping cases, this court acknowledges "Commerce's special expertise and accord[s] substantial deference to its construction of pertinent statutes." *Micron Tech., Inc. v. United States,* 117 F.3d 1386, 1394 (Fed.Cir.1997).

The antidumping laws require calculation of dumping margins by comparing the "normal value" of the subject merchandise to the "U.S. price." *See* 19 U.S.C. § 1675(a). Commerce uses either the EP or the CEP methodology to calculate the U.S. price. Typically, EP sales are U.S. sales made outside of the United States before importation. *See* 19 U.S.C. § 1677a(a). In contrast, CEP sales are U.S. sales made in the United States to an unaffiliated buyer by a party affiliated with the producer or exporter, either before or after importation. *See* 19 U.S.C. § 1677a(b).

To determine the CEP, Commerce starts with the first sale price to an unaffiliated purchaser and makes certain upward and downward adjustments. *See* 19 U.S.C. § 1677a(b)–(d). The provisions governing adjustments to CEP state in pertinent part:

(c) Adjustments for export price and constructed export price

The price used to establish export price and constructed export price shall be—

. ....

(2) reduced by—

(A) [T]he amount, if any, included in such price, attributable to *any additional costs, charges, or expenses,* and United States import duties, *which are incident to bringing the subject merchandise from the original place of shipment* in the exporting country to the place of delivery in the United States, and

(B) the amount, if included in such price, of any export tax, duty, or other charge imposed by the exporting country on the exportation of the subject merchandise to the United States....

(d) Additional adjustments to constructed export price

For purposes of this section, the price used to establish constructed export price shall also be reduced by—

(1) the amount of any of the following expenses generally incurred by or for the account of the producer or exporter, or the affiliated seller in the United States, in *selling* the subject merchandise ...

(A) commissions for selling the subject merchandise in the United States;

(B) expenses that result from, and bear a direct relationship to, the sale, such as credit expenses, guarantees and warranties;

(C) any selling expenses that the seller pays on behalf of the purchaser; and

(D) any selling expenses not deducted under subparagraph (A), (B), or (C);

(2) the cost of any *further manufacture or assembly* (including additional material and labor), except in circumstances described in subsection (e) of this section; and

(3) the *profit* allocated to the expenses described in paragraphs (1) and (2).

19 U.S.C. § 1677a(c), (d) (emphasis added).

As illustrated, statutory deductions generally include movement, selling, and manufacturing expenses. *See* 19 U.S.C. § 1677a(c), (d). Further, subsection (d)(3) specifically requires a deduction of the profit that the exporters would earn had the same activities been performed in the home market.[1] The provision defining profit states:

(f) Special rule for determining profit

(1) In general

For purposes of subsection (d)(3) of this section, profit shall be an amount determined by multiplying the total actual profit by the applicable percentage.

(2) Definitions

For purposes of this subsection:

(A) Applicable percentage

The term "applicable percentage" means the percentage determined by dividing the total United States expenses by the total expenses.

(B) *Total United States expenses*

The term "total United States expenses" means the total expenses described in subsection (d)(1) and (2) of this section.

(C) *Total expenses*

The term "total expenses" means *all expenses* in the first of the following categories which applies and which are incurred by or on behalf of the foreign producer and foreign exporter of the subject merchandise and by or on behalf of the United States seller affiliated with the producer or exporter *with respect to the production and sale* of such merchandise. . . .

19 U.S.C. § 1677a(f) (emphasis added). Essentially, the calculation of U.S. profit under subsection (f) reduces to the following formula:

$$\text{U.S. profit} = \text{Total actual profit} \times \frac{\text{Total U.S. expenses}}{\text{Total expenses}}$$

The "total U.S. expenses" numerator over the "total expenses" denominator constitutes the applicable percentage. *See* 19 U.S.C. § 1677a(f)(2)(A).

■ The sole issue on appeal is whether Commerce properly included movement expenses in the "total expenses" denominator under § 1677a(f)(2)(C). To address this question, this court must first determine whether the Act settles the issue. *See Chevron,* 467 U.S. at 842, 104 S.Ct. 2778. An examination of the statute reveals that the Act has not settled the

question. As an initial matter, § 1677a(f)(2)(C) defining "total expenses" is silent on movement expenses. At its core, the statute defines "total expenses" as "all expenses . . . with respect to the production and sale of [subject] merchandise." 19 U.S.C. § 1677a(f)(2)(C). The breadth of the term "total expenses" encompasses any kind of expense, and the Act makes no express mention of movement expenses. Indeed, "total expenses" is equated with "all expenses" in the language of the statute.

---

**1.** The Statement of Administrative Action (SAA) clarifies: "The deduction of profit is a new adjustment in U.S. law, consistent with the language of the Agreement, which reflects that constructed export price is now calculated to be, as closely as possible, a price corresponding to an export price between non-affiliated exporters and importers." H.R. Doc. No. 103–316, at 823 (1994). The SAA constitutes "an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

Contrary to the domestic producers' assertion, the statutory provision contains ambiguity as to whether movement expenses are included in total expenses. Although the Act states "with respect to production and sale," for example, that clause could either merely exemplify or further limit "all expenses." In other words, the phrase could serve to limit "sale and production" expenses to only those expenses associated with the sale and production of subject merchandise. Alternatively, the phrase could be descriptive, and refer generally to *all* expenses, including sale and production expenses.

Moreover, even assuming for the sake of argument that the phrase "with respect to sales and production" is a limiting phrase, the Act offers no guidance on whether movement expenses would qualify as expenses "with respect to" sales. Thus, it is not at all clear from the plain language of the statute as to whether movement expenses should be included in the total expenses denominator.

The domestic producers argue, however, that a different section of the Act dictates that the CEP be adjusted by "the amount ... incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States." 19 U.S.C. § 1677a(c)(2)(A). According to the domestic producers, this subsection demonstrates that Congress knew how to specifically describe movement expenses. Had Congress intended to include movement expenses in "total expenses," the domestic producers contend, Congress would have used similar specificity when defining "total expenses" and simply explicitly included movement expenses. The domestic producers point to the definition of total U.S. expenses in § 1677a(f)(2)(C) as another example of how Congress might have defined "total expenses" by detailing all of the included expenses.

To be sure, the Act provides a specific and detailed description of how Commerce is to handle some expenses (including what is arguably a movement expense) when adjusting CEP, *see* 19 U.S.C. §§ 1677a(c)(2)(A), (d)(1), (d)(2), and when calculating "total U.S. expenses," *see* 19 U.S.C. § 1677a(f)(2)(B). This specificity, however, merely underscores the ambiguity. of the definition of "total expenses." Had the Act meant to detail the specific expenses included in the definition of "total expenses," it surely could have done so with similar specificity. Instead, the Act defines "total expenses" in a complex, ambiguous manner. As the Court of International Trade stated, "the language defining total expenses is not entirely clear as to whether movement expenses should be included in the total expenses denominator." *U.S. Steel,* 15 F.Supp.2d at 897.

The dissent asserts, however, that "total expenses" and total U.S. expenses are consistently defined as including selling and production expenses. In essence, the dissent argues that because "total U.S. expenses" is defined with reference to the specifically enumerated selling and production expenses in subsections 1677a(d)(1) and (2), the phrase "with respect to production and sale" in the definition of "total expense" must be interpreted to be strictly confined to the enumerated selling and production expenses.

A "holistic" review of the relevant provisions—placing them in proper context within the entire statutory framework—shows that logic and the statute dictate to the contrary. *See Vectra Fitness, Inc. v. TNWK Corp.,* 162 F.3d 1379, 1383 (Fed. Cir.1998). The statute itself defines "total U.S. expenses" distinctly, both structurally and substantively, from "total expenses." Structurally, § 1677a(f)(2)(B) defines "total U.S. expenses" as a list of qualifying expenses, i.e., "the total expenses described in subsections (d)(1) and (2)." Subsections (d)(1) and (2), in turn, list allowable adjustments for selling and manufacturing expenses incurred in the United States. *See* 19 U.S.C. § 1677a(d). The Act, however, does not expressly list movement expenses within the U.S. as part of "total U.S. expenses."

In the immediate following paragraph, the Act defines "total expenses," but defines it very differently—both structurally and substantively. Instead of expressly enumerating qualifying expenses as in its "U.S. expenses" definition, the Act defines "total expenses" generally. "Total expenses," the statute provides, means "all expenses ... incurred by or on behalf of the foreign producer and foreign exporter ... with respect to the production and sale of [subject] merchandise." 19 U.S.C. § 1677a(f)(2)(C). The Act does not restrict expenses according to geography or enumerated categories. Rather, the Act equates "total expenses" with "all expenses." As mentioned before, the Act certainly does not exclude movement expenses, but rather suggests their inclusion with the breadth of its definition of "total expenses." In any event, the Act does not require or even vaguely suggest symmetry between the definitions of "U.S. expenses" and "total expenses." The "U.S. expenses" provision lists and enumerates; the "total expenses" provision does not. In sum, the definitions in the Act themselves undercut symmetrical treatment of "total U.S. expenses" and "total expenses." Thus, the "symmetrical" treatment on which the dissent relies is not compelled by the plain language and the structure of the Act.

Moreover, the dissent's argument assumes that the enumerated U.S. expenses exclude movement costs. To the contrary, the Act's specific enumeration of selling expenses for "total U.S. expenses" includes the category of "any selling expenses not deducted under subparagraph (A), (B), or (C)." 19 U.S.C. § 1677a(d)(1)(D). Thus, the Act itself provides no express rejection of movement expenses within the U.S. as part of "total U.S. expenses."

Further, the Court of International Trade aptly observed that the Statement of Administrative Action (SAA) does not resolve the ambiguity in the statutory definition of "total expenses." See U.S. Steel, 15 F.Supp.2d at 897 n. 5. Similar to the Act itself, the SAA defines "total expenses" as "all expenses incurred by or on behalf of the foreign producer and exporter and the affiliated seller in the United States with respect to the production and sale." SAA at 824. Accordingly, neither the Act nor the SAA settles the question of whether movement expenses belong in the total expenses category.

When, as here, the Act provides no clear guidance on an issue, this court must uphold Commerce's statutory interpretation as long as it is reasonable. See Chevron, 467 U.S. at 843, 104 S.Ct. 2778. The gravamen of the domestic producers' argument, echoing the rationale of the Court of International Trade, lies in symmetry. In particular, the domestic producers advocate a proportionality between "total expenses" (in the denominator) and "total U.S. expenses" (in the numerator). Because the numerator does not include movement expenses, the domestic producers urge, the denominator also should not include movement expenses. Adopting this reasoning, the Court of International Trade reasons: "Logically, the numerator and the denominator of this ratio should be drawn from the same pool of expenses." U.S. Steel, 15 F.Supp.2d at 898.

As demonstrated above, a "holistic" view of the relevant provisions demonstrates that the definitions in the Act themselves undercut the "symmetrical" treatment argument. Thus, as concluded above, the alleged lack of symmetry in the relevant provisions does not compel the conclusion that Commerce's interpretation of "total expenses" is unreasonable.

■ Antidumping laws strive "to calculate antidumping duties on a fair and equitable basis." Koyo Seiko, 36 F.3d at 1573. "To this end, as long as Commerce's application of the adjustment provisions at issue are not arbitrary or illogical, we must uphold its construction even if the approach supported by the Court of International Trade is even more fair or logical." Id. (citing Consumer Prods. Div., SCM Corp. v. Silver Reed Am., Inc., 753 F.2d 1033, 1039 (Fed.Cir.1985)). In light of the statutory and regulatory framework for

determining expenses, this court concludes that Commerce's methodology of computing "total expenses" is reasonable under § 1677a(f)(2)(C).

In the present case, Commerce's inclusion of movement expenses in "total expenses" fairly reflects commercial realities. To determine U.S. profit, the statute requires multiplying total actual profit by the ratio of "total U.S. expenses" to "total expenses." *See* 19 U.S.C. § 1677a(f). In effect, that ratio acts to identify a narrower set of U.S. profit from a base pool of total actual profit. In identifying that subset of total actual profit, the Act sets different standards for identifying "U.S. expenses" as opposed to "total expenses."

According to basic accounting principles, total actual profit is total revenues minus total expenses. Total actual profit is based on all revenues and all expenses. The SAA reiterates this principle and explicitly states that "total profit is calculated on the same basis as the total expenses." SAA at 825. Because movement expenses often are a very significant expense component for overseas imports, Commerce appropriately reasons that these expenses must be part of the equation to derive an accurate U.S. profit. In other words, an accurate determination of the U.S. profit must account for movement expenses—a substantial expense component for heavy imports such as the steel featured in this case. These movement expenses fit logically within "total expenses" in the U.S. profit equation.

Under these circumstances, the absence of statutory adjustment for movement expenses in the numerator, but not in the denominator, appears entirely consistent with the statute's objective in determining a fair and accurate value of U.S. profit. Any other interpretation would unduly skew the U.S. profit computation against importers because the computation would exclude their heaviest expense category, leaving them with a disproportionately high dumping margin. Thus, this court holds that Commerce reasonably interpreted "total expenses" to include total U.S.

and home market movement expenses. Therefore, the Court of International Trade erred in disturbing Commerce's reasonable interpretation.

Further, this court finds unpersuasive the Court of International Trade's misplaced reliance on past practice to reject Commerce's statutory interpretation. Specifically, the Court of International Trade concluded:

> Commerce's interpretation is unreasonable because it conflicts with its past practice of consistently distinguishing between movement and production or selling expenses in other circumstances. *See, e.g.,* Furfuryl Alcohol from the Republic of South Africa, 62 Fed.Reg. 61,084, 61,091 (Dep't Commerce 1997) (final results) (classifying expenses incurred for shipping insurance purposes as movement expense and not a direct selling expense); Silicon Metal from Brazil, 62 Fed.Reg. 47,441, 47,444 (Dep't Commerce 1997) (amended final results) ("inland freight is a movement expense, and not a selling expense"); Certain Stainless Steel Wire Rods from France, 62 Fed.Reg. 7206, 7212 (Dep't Commerce 1997) (final results) (warehousing is a movement expense and not a selling expense).

*U.S. Steel*, 15 F.Supp.2d at 898. Each of the three cases cited, however, addresses exclusion of movement expenses in computing U.S. expenses under the statute. As already noted, the Act does not expressly list movement expenses within the U.S. as one of the enumerated components of "total U.S. expenses." Thus, these three cases only enforce the statute's enumeration. None of these cases relates to the calculation of "total expenses" or acknowledges the distinction between "total U.S. expenses" and "total expenses." Thus, the Court of International Trade incorrectly characterizes these past cases as in conflict with Commerce's enforcement of the Act's very different definition for "total expenses."

Absent clear guidance in the Act, *Chevron* requires this court to defer to the agency's reasonable interpretation. Commerce's method of deducting movement expenses under § 1677a(f)(2)(C) was reasonable. Therefore, this court upholds the initial assessment of Commerce including movement expenses in "total expenses."

## CONCLUSION

The Act does not preclude treating movement expenses as part of "total expenses." Because Commerce's rationale for its methodology was within the bounds of reason, this court reverses the judgment of the Court of International Trade and remands for recalculation of U.S. profit consistent with this opinion.

## COSTS

Each party shall bear its own costs.

*REVERSED and REMANDED.*

LOURIE, Circuit Judge, dissenting.

I respectfully dissent.

I would affirm the decision of the CIT because I believe that movement expenses are not within the definition of "total expenses" as defined in section 1677a(f)(2)(C). That provision defines total expenses as "all expenses ... incurred ... with respect to the *production* and *sale* of [the subject] merchandise." 19 U.S.C. § 1677a(f)(2)(C) (1994) (emphasis added). That language is not unclear or ambiguous. While the term "all expenses" appears to be comprehensive, the subsequent qualification "with respect to the production and sale" is limiting.

In interpreting this definition, it is useful to refer to the previous definition in section 1677a(f)(2)(B), "Total United States Expenses," which means those "expenses described in subsection (d)(1) and (2) of this section." 19 U.S.C. § 1677a(f)(2)(B). The expenses described in subsection (d)(1) all relate to selling expenses, and those described in subsection (d)(2) all relate to "manufacture or assembly." The latter are essentially production expenses. Thus, total United States expenses and total expenses are consistently defined as including selling and production (manufacture) expenses. We are not entitled to modify an unambiguous provision.

Elsewhere in this section there is reference to what are clearly movement expenses. Section 1677a(c)(2)(A) refers to "the amount ... attributable to any additional costs, charges, or expenses ... incident to *bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States,*" i.e., movement expenses. 19 U.S.C. § 1677a(c)(2)(A) (emphasis added). All parts of a statute must be interpreted to provide consistent meaning. Congress obviously had such expenses in mind when it failed to include them in the definition of total expenses.

Commerce is surely entitled to deference in interpreting a statute it is obligated to implement. However, *Chevron* deference need not be given when Congress has spoken to the issue before us. The plain language of the statute states that CEP is to be reduced for: movement expenses, under section 1677a(c)(2)(A); sales and production expenses, under sections 1677a(d)(1) and 1677a(d)(2); and profits allocated to sales and production expenses, under sections 1677a(d)(3) and 1677a(f). Because the provisions of the statute are clear in not including movement expenses as "total expenses," I believe we need not reach the second *Chevron* step to determine whether Commerce's interpretation to the contrary is reasonable.