Slip Op. 04 - 04

UNITED STATES COURT OF INTERNATIONAL TRADE

```
- - - - - - - - - - - - - - - - - - - - x
OLIN CORPORATION-BRASS GROUP; OUTOKUMPU
AMERICAN BRASS; REVERE COPPER PRODUCTS, :
INC.; THE INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS; THE   :
UNITED AUTO WORKERS (LOCAL 1024 AND LO-
CAL 2367); and THE UNITED STEELWORKERS  :
OF AMERICA (AFL-CIO/CLC),
                                        :
               Plaintiffs,
                                        :
          v.
                                        :
UNITED STATES,                          Court No. 00-05-00232
                                        :
               Defendant,
                                        :
          -and-
                                        :
POONGSAN CORPORATION and PMX INDUSTRIES,
INC.,                                   :

          Intervenor-Defendants.    :
- - - - - - - - - - - - - - - - - - - - x
```

Memorandum & Order

[Plaintiffs' motion for judgment on the
 agency record denied; action dismissed.]

Decided: January 9, 2004


Collier Shannon Scott, PLLC (David A. Hartquist, Jeffrey S. Beckington, Kathleen W. Cannon and Grace W. Kim) for the plaintiffs.

Lyn M. Schlitt, General Counsel, Marc A. Bernstein, Acting Assistant General Counsel, Charles A. St. Charles, Attorney-Adviser, United States International Trade Commission, for the defendant.

Akin, Gump, Strauss, Hauer & Feld, L.L.P. (Warren E. Connelly and Catherine J. Finnegan) for the intervenor-defendants.


AQUILINO, Judge: This action, commenced pursuant to 19 U.S.C. §1516a(a), contests the determination of the U.S. Inter-

national Trade Commission ("ITC") <u>sub</u> <u>nom</u>. <u>Brass Sheet and Strip</u>

<u>from Brazil, Canada, France, Germany, Italy, Japan, Korea, the</u>

<u>Netherlands, and Sweden</u>, 65 Fed.Reg. 20,832 (April 18, 2000), that

> revocation of the antidumping duty orders on brass sheet
> and strip from Korea . . . would not be likely to lead to
> continuation or recurrence of material injury to an
> industry in the United States within a reasonably
> foreseeable time.

This notice of the ITC's five-year or "sunset-review" determination

pursuant to 19 U.S.C. §1675(c) (1995) notes the dissents of two of

the six commissioners voting on the matter.

The plaintiffs plead their perceived causes of action

most succinctly as follows:

### COUNT I

11.  The ITC's decision not to cumulate imports from
Korea with other subject imports was contrary to law.
The ITC relied solely on a newly-created "conditions of
competition" factor, essentially a separate and individ-
ual-country causation analysis, to refuse to cumulate the
subject imports from Korea with other subject imports.
The Commission's individual-country causation analysis,
as a predicate to cumulation, defeats the purpose of
cumulation and represents an unlawful exercise of the
Commission's discretion in applying the cumulation pro-
vision.

### COUNT II

12.  The ITC's decision not to cumulate imports from
Korea with the subject imports was not supported by the
facts of record.  The "conditions of competition" factor
the Commission analyzed as the basis for its determina-
tion not to cumulate imports from Korea with imports from
the other countries were neither relevant to the cumula-
tion analysis nor consistent with the conditions of com-
petition the Commission identified elsewhere in its
determination.

**COUNT III**

13.  Commissioner Askey's determination that there was no discernible adverse impact by reason of imports from Korea was contrary to law and was not supported by substantial evidence of record.[1]

And, in accordance with USCIT Rule 56.2, the plaintiffs have interposed a motion for judgment on these grounds and based upon the record compiled by the ITC in conjunction with its foregoing determination.[2]

I

The court's jurisdiction to decide this action is pursuant to 19 U.S.C. §1516a(a)(2)(B)(iii) and 28 U.S.C. §§ 1581(c), 2631(c).  And, whatever the issues raised herein, the ITC's determination must be affirmed unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law".  19 U.S.C. §1516a(b)(1)(B)(i).  Moreover, the rule has been that, in

> reviewing an agency's construction of a statute that it administers, this court addresses two questions outlined by the Supreme Court in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 . . . (1984).  The first question is "whether Congress has directly spoken to the precise question at issue." Id. at 842 . . ..  If so, this court and the agency "must give effect to the unambiguously expressed intent of Congress." Id. at 843 . . ..  If, however, Congress has not spoken directly on the issue, this court addresses

---

[1] Boldface capitals, underscoring as in original.

[2] The plaintiffs have also interposed a motion for oral argument that need not be granted, given the quality of their written submissions, as well as of those on behalf of the parties in opposition to the motion for judgment.

the second question of whether the agency's interpreta-
tion "is based on a permissible construction of the
statute." Id.

"To survive judicial scrutiny, an agency's construc-
tion need not be the only reasonable interpretation or
even the most reasonable interpretation." Koyo Seiko
[Co. v. United States], 36 F.3d [1565,] 1570 [Fed.Cir.
1994]. Thus, when faced with more than one reasonable
statutory interpretation, "a court must defer to an
agency's reasonable interpretation . . . even if the
court might have preferred another." NSK Ltd. v. United
States, 115 F.3d 965, 973 (Fed.Cir. 1997) (citations
omitted).

U.S. Steel Group v. United States, 225 F.3d 1284, 1286-87 (Fed.Cir.

2000). Compare United States v. Mead Corp., 533 U.S. 218 (2001).


A

The statute underlying this action is the Uruguay Round

Agreements Act ("URAA"), Pub. L. No. 103-465, 108 Stat. 4809 (Dec.

8, 1994), section 220 of which established the five-year, "sunset"

reviews of outstanding antidumping- and countervailing-duty orders

to be conducted pursuant to:

**Special rules for section 1675(b) and 1675(c) reviews**

**(a)  Determination of likelihood of continuation or
      recurrence of material injury**

**(1) In general**

In a review conducted under section
1675(b) or (c) of this title, the Commission
shall determine whether revocation of an order
. . . would be likely to lead to continuation
or recurrence of material injury within a
reasonably foreseeable time. The Commission
shall consider the likely volume, price ef-
fect, and impact of imports of the subject
merchandise on the industry if the order is

revoked or the suspended investigation is terminated. . . .

19 U.S.C. §1675a(a).  In addition to explaining in further detail the factors the ITC is to consider in evaluating the likely volume of imports and their price effect and impact on a domestic industry, the statute provides for cumulation in sunset reviews as follows:

> For purposes of this subsection, the Commission may cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which reviews under section 1675(b) or (c) of this title were initiated on the same day, if such imports would be likely to compete with each other and with domestic like products in the United States market. The Commission shall not cumulatively assess the volume and effects of imports of the subject merchandise in a case in which it determines that such imports are likely to have no discernible adverse impact on the domestic industry.

19 U.S.C. §1675a(a)(7).

B

Plaintiffs' Rule 56.2 motion is accompanied by a proposed form of order, which would remand this matter to the ITC and require three commissioners who voted in support of the determination at bar to conduct their

> cumulation analysis without regard either to whether imports from Korea, by themselves, will likely cause material injury to the domestic industry in the event of revocation or to the establishment by Poongsan Metal Corp., a Korean producer, of a U.S. affiliate,

and also require the fourth, Commissioner Askey, to

analyze the "no discernible adverse impact" exception to cumulation in a manner consistent with the language of the statute, the legislative history, and the facts of record.

(1)

To address first this latter proposed form of relief, the

plaintiffs claim that

Commissioner Askey's cumulation analysis was flawed in two significant respects. First, she required that imports have "a" discernible adverse impact in order to cumulate rather than "no" discernible adverse impact in order not to cumulate. Second, she insisted that the impact of the imports be reflected in factors in addition to the import volume. Both of these interpretations are contrary to the statute and the legislative history and are not in accordance with law.

Plaintiffs' Rule 56.2 Brief, p. 32 (underscoring in original). Cf. USCIT Pub. 3290, pp. 9 n. 41, 10 n. 46, 36-37, 40-41. This complaint about this particular commissioner's mode of analysis has been pleaded before. Careful consideration of it in Neenah Foundry Co. v. United States, 25 CIT ___, 155 F.Supp.2d 766 (2001), for example, left the court unable to conclude that her approach was not in accordance with law. The court's reasoning in support of that holding per part I-C of its opinion and order, 25 CIT at ___, 155 F.Supp.2d at 774-77, is incorporated herein by reference.

(2)

To the extent the complaint of the plaintiffs about the three other commissioners in the ITC majority at bar coincides with that filed in Neenah, that opinion also governs their approach to cumulation herein. In that action as in this one, the primary

issue before the court was whether, in the context of cumulation, it was an abuse of discretion for commissioners to look to "conditions of competition"[3] in determining the appropriateness of assessing cumulatively the likely volume and price effects of subject imports from one country [India in <u>Neenah</u>, herein Korea] with those from other covered countries of origin.  The court could not and therefore did not conclude that such an approach amounted to an abuse of discretion or otherwise was not in accordance with law.  <u>See</u> <u>Neenah Foundry Co. v. United States</u>, 25 CIT at ___, 155 F.Supp.2d at 769-74.

In this action, the views of the three commissioners at issue are reported as follows:

> The limited record concerning subject imports from Brazil, Canada, France, Germany, Italy, and Japan indicates that, if the orders are revoked, those subject imports would likely compete in the U.S. market under similar conditions of competition.  As indicated above, the record does not indicate any change in the conditions of competition with respect to imports from these subject countries since imposition of the orders.  Therefore, we conclude that the orders were primarily responsible for the reduction in imports of brass sheet and strip from these subject countries to the United States.  Accordingly, we exercise our discretion to cumulate subject imports from these countries.

> By contrast, subject imports from Korea would likely face different conditions of competition in the U.S. market than the subject imports from those six countries.  Specifically, subsequent to the original determination, the principal Korean producer/exporter of the subject merchandise, Poongsan, has held a *** -percent ownership interest in a U.S. producer, PMX.  PMX established a greenfield operation in Cedar Rapids, Iowa in 1992 and is

---

[3] USITC Pub. 3247, pp. 11-16, 23, 28-31 (Oct. 1999); USCIT Pub. 3290, pp. 10, 13, 14, 16, 17, 23, 27, 28.

> now one of the leading U.S. producers of the domestic like product.[69]  None of the brass sheet and strip producers in Brazil, Canada, France, Germany, Italy, or Japan has an affiliated producer of the domestic like product in the United States.  Accordingly, whereas the presence of other subject producers in the U.S. market would be limited to exports, the principal Korean producer has made a substantial commitment to production in the United States.  On the basis of this significant difference in the conditions of competition between Korea and other subject countries, we do not exercise our discretion to cumulate subject imports from Korea with other subject imports.

USITC Pub. 3290, pp. 13-14 (footnotes 68, 70, 71 omitted).  As for footnote 69, it states that "PMX's U.S. capacity is substantially larger than Poongsan's and the range of products is similar."  Cf. id. at 22.

The court has finally reviewed the ITC's record and finds substantial evidence to exist thereon in support of the above-quoted analysis.  Moreover, in the light of that record, the court cannot conclude that it was an abuse of discretion for the ITC not to cumulate whatever imports there may have been or could be from some eight other producers of brass sheet and strip in Korea.

## II

In view of the foregoing, plaintiffs' motion for judgment upon that record must be denied and this action dismissed. Judgment will enter accordingly.

So ordered.

Decided:  New York, New York
          January 9, 2004

                                        /s/ Thomas J. Aquilino, Jr.
                                                  Judge