**Robert B. LIESEGANG, Sr., Roberto Sotelo, and Paul L. Fletcher, Petitioners,**

v.

**SECRETARY OF VETERANS AFFAIRS, Respondent.**

No. 01–7109.

United States Court of Appeals, Federal Circuit.

DECIDED: Dec. 10, 2002.

---

Barton F. Stichman, National Veterans Legal Services Program, of Washington, DC, argued for petitioners. With him on the brief was Louis J. George.

Gerald M. Alexander, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Deborah A. Bynum, Assistant Director. Of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel; and David J. Barrans, Attorney, Department of Veterans Affairs, of Washington, DC.

Before CLEVENGER, RADER and LINN, Circuit Judges.

CLEVENGER, Circuit Judge.

Robert B. Liesegang, Sr., Roberto Sotelo and Paul L. Fletcher (collectively, the "Petitioners") challenge the effective date that the Secretary of Veterans Affairs assigned to a regulation, published at 66 Fed. Reg. 23,166–69 (May 8, 2001), that creates a presumption of service connection benefits for Vietnam veterans who developed Type–2 diabetes. In challenging the rulemaking process that led to the final regulation and the final regulation itself, the Petitioners contend that the Department of Veterans Affairs (the "agency") erroneously assigned a later effective date to the disputed regulation. Because we hold that the agency misconstrued Congress's intent and that the effective date of the regulation is the date of publication in the Federal Register, we remand to the agency for further actions consistent with this opinion.

I

The crux of this challenge focuses on the effective date of the regulation: the agency assigned to the regulation an effective date of July 9, 2001, while the Petitioners assert that it should be April 8, 2001. By obtaining an earlier effective date, the Petitioners hope to benefit from the liberalizing provisions of 38 U.S.C. § 5110(g) that permit the agency to award benefits even before the claim was filed. However, section 5110(g) limits such liberality by providing that benefits "shall not be earlier than the effective date of the . . . administrative issue." Accordingly, a ruling on the effective date determines whether the Petitioners and other veterans in their situation can receive additional months of benefits.

At bottom, the resolution of this dispute turns on the interpretation of, and the agency's compliance with, the controlling statute. That statute is the Agent Orange Act of 1991, Pub. L. No. 102–4, 105 Stat. 11 (1991) (codified in part at 38 U.S.C. § 1116) (the "AOA"). In relevant parts, the AOA establishes a procedure for the agency to identify diseases associated with exposure to Agent Orange during service,

and empowers the Secretary to promulgate regulations that would create presumptions of service connection for those identified diseases. 38 U.S.C. § 1116(a)(1)(B) and (b)(1) (2000); *LeFevre v. Sec'y, Dep't of Veterans Affairs*, 66 F.3d 1191, 1192–94 (Fed.Cir.1995) (discussing history and framework of the statute).

As part of the procedural framework, the AOA instructs the Secretary to take certain actions within a set timeframe. Thus, "[n]ot later than 60 days" after receiving a report from the National Academy of Science (the "NAS") regarding a certain disease, the Secretary must "determine whether a presumption of service connection is warranted for each disease covered by the report." 38 U.S.C. § 1116(c)(1)(A) (2000). Then, "[i]f the Secretary determines that such a presumption is warranted, the Secretary, not later than 60 days after making the determination, shall issue proposed regulations setting forth the Secretary's determination." *Id.* Subsequently, but "[n]ot later than 90 days after" issuing the proposed regulations, the Secretary must issue final regulations. *Id.* § 1116(c)(2). "Such regulations shall be effective on the date of issuance." *Id.* In part, the Petitioners claim that the Secretary failed to comply with those statutory requirements.

Neither party disputes the relevant facts in this case. In 2000, the Secretary requested that the NAS assess whether there was a connection between exposure to Agent Orange and the subsequent development of Type–2 diabetes. On October 11, 2000, the NAS issued its report, concluding that such connection appeared to exist.

Upon issuance of that report, the agency initiated the process of promulgating the appropriate regulation as required by the AOA. On November 9, 2000, which was 29 days instead of the statutory 60 days after receiving the NAS report, the Secretary issued a press release announcing his decision to establish a presumption of service connection for Type–2 diabetes under the AOA. On January 11, 2001, the agency published the proposed regulation. Published 63 days after the press release announcement, which was three days later than the statutory deadline, the proposed regulation established a presumption of service connection for Type–2 diabetes and provided 60 days for the public to submit comments. By the expiration of the deadline for public comment on March 12, 2001, the agency had received 14 comments to the proposed rule. Having reviewed those comments, the agency prepared a final-rule notice that addressed each of the comments and transmitted the notice to the Office of Management and Budget ("OMB") on April 19, 2001.

After receiving clearance from the OMB, the agency transmitted the final rule to the Office of the Federal Register on May 3, 2001 and requested an emergency filing of the document for May 7, 2001. In that request, the agency admitted that the statutory deadline for publication of the final rule should have been April 11, 2001. The next day, on May 8, 2001, which was 120 days after publication of the proposed regulation and thus 30 days later than the statute permitted, the Federal Register published the final rule with an effective date of July 9, 2001. *See* 66 Fed. Reg. 23,166–69 (May 8, 2001).

As part of the final rule, the agency rejected a comment that the regulation should be retroactive. Specifically, the agency stated that "[t]he effective date established by this rule is in accordance with 38 U.S.C. § 1116(c)(2) and 5 U.S.C. § 801 et seq."

On June 14, 2001, the Acting Director of the agency's Compensation and Pension Service issued Fast Letter 01–51 to the

directors of all Veterans Administration Regional Offices ("regional offices"). The Fast Letter notified the regional offices of the new diabetes-herbicide regulation and provided instructions for implementing the new rule. As part of those instructions, the Fast Letter stated that "[t]he effective date of this regulation is July 9, 2001, and on that date, you should begin processing all pending claims using that effective date." Since the Fast Letter merely implements the final rule, its validity stands or falls with the underlying regulation.

After filing their claims under the regulation in August 2001, the Petitioners challenged the effective date contained in the final rule and the Fast Letter. The three Petitioners are honorably discharged veterans who served in Vietnam in the 1960s and currently suffer from Type–2 diabetes. We have jurisdiction pursuant to 38 U.S.C. § 502.

## II

This case arises under our original jurisdiction pursuant to 38 U.S.C. § 502. Section 502 provides in relevant part:

> An action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers ... is subject to judicial review. Such review shall be in accordance with chapter 7 of title 5 and may be sought only in the United States Court of Appeals for the Federal Circuit.

38 U.S.C. § 502 (2000). "[U]nder 38 U.S.C. § 502, we may review the [agency]'s procedural and substantive rules, any amendments to those rules, and the process in which those rules are made or amended." *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 688 (Fed.Cir.2000) (citing *Mortgage Investors Corp. of Ohio v. Gober*, 220 F.3d 1375, 1378 (Fed.Cir.2000); *Splane v. West*, 216 F.3d 1058, 1062 (Fed. Cir.2000); *LeFevre*, 66 F.3d at 1196).

■ Such review follows the Administrative Procedure Act (the "APA"). *See* 38 U.S.C. § 502 (2000). The APA requires the reviewing court to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706 (2000); *see also Disabled Am. Veterans*, 234 F.3d at 691. This court reviews questions of statutory interpretation without deference. *RHP Bearings, Ltd. v. United States*, 288 F.3d 1334, 1343 (Fed.Cir.2002); *U.S. Steel Group v. United States*, 225 F.3d 1284, 1286 (Fed.Cir.2000). Where a finding of fact or a discretionary action is involved, the APA requires the reviewing court to set aside agency actions that are:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right; [or]
>
> (D) without observance of procedure required by law. . . .

5 U.S.C. § 706(2)(A)-(D) (2000). "This review is 'highly deferential' to the actions of the agency." *Disabled Am. Veterans*, 234 F.3d at 691 (citing *LeFevre*, 66 F.3d at 1199 (quoting *Ethyl Corp. v. Envtl. Prot. Agency*, 541 F.2d 1, 34 (D.C.Cir.1976))).

## III

### A

■ The Petitioners contend that the agency misconstrued the AOA and improperly assigned to the disputed rule an effective date of July 9, 2001. Our review of the agency's interpretation is governed by the standards established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778,

81 L.Ed.2d 694 (1984). In *Chevron,* the Court stated:

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. 2778 (footnotes omitted). Under this framework, "[w]hen reviewing an agency's construction of a statute that it administers, this court first determines 'whether Congress has directly spoken to the precise question at issue.'" *Gallegos v. Principi,* 283 F.3d 1309, 1312 (Fed.Cir.2002) (quoting *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778). The parties concede that we need not look beyond Congress's express intent.

Indeed, Congress unambiguously addressed this issue in the AOA by decreeing that "[s]uch regulations shall be effective on the date of issuance." 38 U.S.C. § 1116(c)(2) (2000). The agency therefore has no choice but to give effect to Congress's clear intent. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. In compliance with that command, the agency has—until now—generally assigned the date of publication in the Federal Register as the effective date of a rule promulgated under section 1116. *See, e.g.,* Diseases Associated With Exposure to Certain Herbicide Agents (Prostate Cancer and Acute and Subacute Peripheral Neuropathy), 61 Fed. Reg. 57,586, 57,588 (Nov. 7, 1996) ("Pursuant to the provisions of 38 U.S.C. 1116(c)(2), this final rule is made effective on the date of publication in the Federal Register."); Disease Associated With Exposure to Certain Herbicide Agents (Multiple Myeloma and Respiratory Cancers), 59 Fed. Reg. 29,723, 29,723 (June 9, 1994) ("38 U.S.C. 1116(c)(2), ... clearly and unambiguously requires that regulations promulgated [under that section] be effective on the date of issuance, i.e., the date the final rule is published in the Federal Register. The effective date for this rule conforms to that statutory mandate.").

Notwithstanding the provisions of 38 U.S.C. § 1116(c)(2), the agency believed that the rule in this case should receive a later effective date in light of another statute. That other statute is section 251 of the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104–121, tit. II, § 251, 110 Stat. 868 (1996) (codified at 5 U.S.C. §§ 801–808 (2000)), more popularly known as the Congressional Review Act ("CRA"). Enacted five years after the passage of the AOA in 1991, the CRA requires congressional review of agency regulations by directing agencies to submit the rule before it takes effect to the Comptroller General and each house of Congress. 5 U.S.C. § 801(a)(1) (2000). As part of the submission, the agency must provide a report containing a copy of the rule, a concise general statement of that rule (including whether it is a "major rule"), and the proposed effective date of the rule. *Id.*

Under the CRA, a regulation must pass an additional hurdle if it is a "major rule." A major rule is a regulation that the OMB determines to (1) have an annual effect on the economy of $100 million or more, (2) cause a major increase in prices in the economy, or (3) have significant adverse

effects on, among other things, competition. *Id.* § 804(2). Unless Congress objects, a major rule "shall take effect on the latest of" (1) 60 days from the date Congress receives the report or the date on which the rule is published in the Federal Register, or (2) "the date the rule would have otherwise taken effect...." *Id.* § 801(a)(3). In enacting the CRA, Congress provided that "[t]his chapter shall apply notwithstanding any other provision of law." *Id.* § 806(a).

Citing the CRA, the agency argues that the rule's effective date must be the later of 60 days after Congress's receipt of the report or publication in the Federal Register. *See id.* § 801(a)(3). To do otherwise, the agency contends, would create a conflict between the CRA and the AOA. On the one hand, the CRA requires at least a 60-day waiting period to give Congress the opportunity to review the proposed rule. On the other hand, the AOA states that the rule is effective upon issuance, not 60 days later. Attempting to reconcile and comply with both statutes, the agency determined that the later statute changed the AOA's "effective date" to the date upon which the rule "take[s] effect" under the CRA. According to the agency, to adopt an earlier date than July 9, 2001, would contravene the provisions of the CRA.

■ That reasoning is erroneous and we decline to adopt it. Under the agency's approach, the CRA implicitly repeals part of the AOA when a major rule is involved by delaying the regulation's effective date beyond the date provided by the AOA. But, as this court has previously recognized, "[r]epeals by implication are not favored and can only be justified when the earlier and later statutes are irreconcilable." *Horner v. Jeffrey,* 823 F.2d 1521, 1527 (Fed.Cir.1987) (citing *Tenn. Valley Auth. v. Hill,* 437 U.S. 153, 189–90, 98

S.Ct. 2279, 57 L.Ed.2d 117 (1978); *Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *Lovshin v. Dep't of the Navy,* 767 F.2d 826, 842 (Fed. Cir.1985)). "[W]hen two statutes are capable of co-existence, it is the clear duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Horner,* 823 F.2d at 1527–28 (quoting *Mancari,* 417 U.S. at 551, 94 S.Ct. 2474) (alteration in original). Unlike the agency, we see no need to implicitly eviscerate a law enacted by Congress. And, our independent review of the statute and its legislative history indicates that the agency saw a statutory conflict where none exists. In reading the statute, the agency was apparently misled by the assumption that the term "take effect" under the CRA equates to the phrase "effective date" in the AOA, thereby overruling the AOA's provision.

■ That assumption, however, has no support in the text of the CRA or its legislative history. Indeed, the statutory text provides that the regulation "shall take effect;" it does not state, "the effective date is." *See* 5 U.S.C. § 801(a)(3) (2000). Also, the ordinary meaning of the term "take effect" contravenes the agency's erroneous assumption. When the statute does not define a term, as it is the case here, the agency and the reviewing court must give the undefined term its ordinary meaning. *AK Steel Corp. v. United States,* 226 F.3d 1361, 1371 (Fed. Cir.2000) (citing *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.")) (using *Black's Law Dictionary* to define statutory term); *see also Humana, Inc. v. Forsyth,* 525 U.S. 299, 309–10, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999) (cit-

ing *Black's Law Dictionary* when interpreting a statutory term). The ordinary meaning of "take effect" is "[t]o be in force; go into operation." *Black's Law Dictionary* 1466 (7th ed. 1999). As shown by the term's denotation, the CRA does not change the date on which the regulation becomes effective. It only affects the date when the rule becomes operative. In other words, the CRA merely provides for a 60–day waiting period before the agency may enforce the major rule so that Congress has the opportunity to review the regulation.

Our review of the legislative history strengthens our reading of the plain meaning of the statute. As Senate Report No. 104–89 explained,

> Section 4 of this legislation [codified as the CRA] establishes a government-wide congressional review mechanism for all major rules. This allows Congress the opportunity to review every major rule before it takes effect and to disapprove any rule to which Congress objects. Congress may find a rule to be too burdensome, excessive, inappropriate or duplicative.... This makes congressional review of rules an important component of regulatory reform. Congressional review gives the public the opportunity to call the attention of politically accountable, elected officials to concerns about proposed rules. If these concerns are sufficiently serious, Congress can stop the rule before any damage is done.

S.Rep. No. 104–89, at 53–54 (1995). *See also* S.Rep. No. 104–88, at 54 (1995) (using same language to explain the enactment of the statute). As further explained by another report, the CRA "will allow Congress to examine agency rules before they are made effective and to determine whether to take legislative action disapproving rules that do not accurately reflect the intent of Congress in enacting the underlying statutory scheme." S.Rep. No. 104–90, at 123 (1995). To permit Congress time to review the rule before it becomes operative, the statute "establishes a 45 day [expanded to 60 days in the final statute] period after a major rule is published as final during which Congress, by joint resolution, can disapprove the rule using an expedited procedure." S.Rep. No. 104–89, at 54. There is no indication that Congress intended to change, amend, or repeal the effective date provision of the AOA in enacting the CRA. Rather, the legislative history shows that the CRA aimed to be a "hold" provision that stays the operative date of a rule while the legislature can review and, if necessary, disapprove a final regulation. Consequently, the agency's erroneous assumption regarding the meaning of "take effect" has no support either in the plain language of the statute or the legislative history.

Hence, a correct construction of the CRA fully dissipates the agency's arguments that the CRA and the effective date provisions of the AOA are irreconcilable and that the so-called effective date provision in the CRA must govern. Instead, the two statutes live together most comfortably, each there to accomplish the task assigned to it by Congress. This harmony is all the more appropriate when the linkage is between a major rule promulgated by the agency that benefits our veterans and the duty of Congress to oversee such a rule. We think it would be most unusual and wrong to attribute to Congress an intent to short-change our veterans, in terms of the effective dates of rules drawn in their favor, when Congress by prompt action determines that a particular rule should be permitted to "take effect." If upon CRA review by the Congress, a legislative decision is made that would alter the terms of a major rule under consideration, then in that instance the Congress is am-

ply empowered to rearrange both the substance and the effective date of any such rule by enacting a new law.

In sum, the CRA only affects the operative date of the regulation, not its effective date. In other words, the CRA delayed the date on which the Type–2 diabetes regulation in this case became operative, and the agency had to wait until July 9, 2001, to implement that rule. But, because the CRA only controls the operative date of the rule, the regulation's effective date—the date from which the agency may start paying benefits to the veterans—is not July 9, 2001. Instead, under the AOA, the effective date is the date of the rule's issuance, which is May 8, 2001. *See* 38 U.S.C. § 116(c)(2) (2000).

### B

■ The Petitioners contend that the agency should pay benefits starting from April 8, 2001, a month before the rule's effective date. They argue that the agency's failure to comply with the statutory timeframe provided by 38 U.S.C. § 1116(c) compels the adoption of that earlier date. The Petitioners compose their argument based on the failure of the agency in this case to meet some of the statutory deadlines set forth in section 1116(c). According to the Petitioners, this error by the agency requires us to assume that the agency had in fact met the time requirements, which would yield an imputed effective date of April 8, 2001. The price the agency must pay for its errors in timing, according to the Petitioners, is an effective date that is earlier than, and one in conflict with, the clear terms of section 1116(c)(2), which stipulates the date of publication for the effective date of a regulation promulgated under the AOA. We disagree.

■ Neither precedent nor statutory authority supports the adoption of an earlier effective date as urged by the Petition-

ers. It is well settled that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (citing *United States v. Montalvo–Murillo*, 495 U.S. 711, 717–21, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990); *Brock v. Pierce County*, 476 U.S. 253, 259–62, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986)).

For instance, in *Montalvo–Murillo,* the Supreme Court held that the federal courts could not release a person pending trial solely because the hearing had not been held "immediately" as required by statute. *Montalvo–Murillo,* 495 U.S. at 716–17, 110 S.Ct. 2072. The Court stated that "[t]here is no presumption or general rule that for every duty imposed upon the court or the Government and its prosecutors there must exist some corollary punitive sanction for departures or omissions, even if negligent." *Id.* at 717, 110 S.Ct. 2072. As it explained, "[w]e do not agree that we should, or can, invent a remedy to satisfy some perceived need to coerce the courts and the Government into complying with the statutory time limits." *Id.* at 721, 110 S.Ct. 2072.

Similarly, in *Brock,* the Court rejected an argument that an agency's failure to act within the statutorily specified time period divested the agency of the authority to investigate a claim after the time limit had passed. *Brock,* 476 U.S. at 258–62, 106 S.Ct. 1834. The Court rejected that contention because the statute did not specify a consequence for a failure to comply with the timing provision. *Id.*

Our own precedent has faithfully applied this rule of law as formulated by the Supreme Court. *See Kemira Fibres Oy v.*

*United States,* 61 F.3d 866, 871 (Fed.Cir. 1995) (ruling that the agency's failure to comply with mandatory time limit in regulation does not bar subsequent agency action). Indeed, we have clearly stated that, "even in the face of a statutory timing directive, when a statute does not specify the consequences of non-compliance, courts should not assume that Congress intended that the agency lose its power to act." *Id.*

Furthermore, our sister circuits have consistently adhered to this principle as well. *See, e.g., Southwestern Penn. Growth Alliance v. Browner,* 121 F.3d 106, 113–15 (3d Cir.1997) (holding that a statute stating that an agency "shall" complete action by a certain time does not divest the agency of jurisdiction to act unless there is some additional indication in the statute of a congressional intent to bar further agency action); *In re Siggers,* 132 F.3d 333, 336 (6th Cir.1997) ("The law is well-established in this and other jurisdictions that '[a] statutory time period is not mandatory unless it *both* expressly requires an agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision.'" (quoting *McCarthney v. Busey,* 954 F.2d 1147, 1152 (6th Cir.1992)) (internal quotation marks omitted)); *Hendrickson v. FDIC,* 113 F.3d 98, 101 (7th Cir.1997) ("Standing alone, moreover, use of the word 'shall' in connection with a statutory timing requirement has not been sufficient to overcome the presumption that such a deadline implies no sanction for an agency's failure to heed it.").

Although section 1116 in this case lays out certain statutory deadlines for the agency to follow, the statute does not provide any consequences for the agency's failure to comply with those timing requirements. *See generally* 38 U.S.C. § 1116 (2000). In the absence of any consequences for noncompliance, those timing provisions are at best precatory rather than mandatory. The Petitioners have not provided us with a compelling reason to depart from this settled rule of law, and we independently see no basis for doing so in this case. Consequently, we decline to create or impose our own sanctions where Congress is silent.[1] *See James Daniel Good,* 510 U.S. at 63, 114 S.Ct. 492; *Montalvo–Murillo,* 495 U.S. at 717–21, 110 S.Ct. 2072; *Brock,* 476 U.S. at 259–62, 106 S.Ct. 1834.

Apart from the absence of legal support for the Petitioners' imputed earlier effective date for the regulation in suit, their argument also lacks appeal as a practical matter. The agency acted in this instance later in some stages of the rulemaking proceeding and earlier in other stages than specified in the overall statutory time-table. In the end, the regulation was pro-

---

1. In any case, settled and binding precedent precludes us from giving retroactive effect to the regulation, as requested by the Petitioners. In general, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208–09, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). "And the Court has emphasized that 'the standard for finding such unambiguous direction is a demanding one.'" *Bernklau v. Principi,* 291 F.3d 795, 805 (Fed.Cir.2002) (finding no intent to make a veteran-related statute retroactive) (quoting *INS v. St. Cyr,* 533 U.S. 289, 316, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)). The statutory language of section 1116 is devoid of such express and unambiguous permission. There is no provision in the statute's text that would suggest that Congress expressly granted the agency the authority to promulgate a retroactive regulation under the AOA. To the contrary, the statute states that the regulation is effective only upon issuance. 38 U.S.C. § 1116(c)(2) (2000). This is not a case where there is an express grant of authority to issue a retroactive regulation.

mulgated within the full timetable under which the agency is burdened. The Petitioners are thus hard-pressed to argue harmful error to them from the interstitial oversights in this case, when overall the agency would have been free to engage the full 210–day process by which it must bring its AOA regulations to fruition. Had the full time been taken here, the effective date would have been even later than May 8, 2001, the actual date of publication of the final regulation.

## C

Because we conclude, for the reasons stated above, that the agency erred in thinking that the effective date of the pertinent regulation is July 9, 2001, and we hold that the correct effective date is May 8, 2001, we rule favorably on the petition for review before us. The Petitioners, however, are not satisfied with a measure of relief that ends with declaration of the correct effective date for the regulation.

■ The Petitioners note correctly that from this day forward the agency will be required to respect and implement the May 8, 2001 effective date of the regulation. The Petitioners also point to the likely fact that since July 9, 2001–the date upon which the agency began to afford veterans the benefits to which they are legally entitled-the agency may have adjudicated claims in which the July 9 date has been assigned as the effective date. Some of those claims may be still in progress; some may have been adjudicated to the point of finality. As relief to the entire population of existing claimants under the regulation, the Petitioners ask that we vacate all compensation effective date decisions made by the agency on claims that it received before July 2, 2002, and has granted under the diabetes regulation. Further, the Petitioners seek an injunction compelling the agency to reassign new ef-

fective dates for all such claims, and an order that the agency do so with haste by a definite date.

With regard to claims by veterans under the diabetes regulation that have not reached final adjudication, we have no reason to doubt that the agency will apply the correct effective date of May 8, 2001. With regard to those veterans whose claims under the regulation have already been finally adjudicated with an effective date of July 9, 2001, we are not unsympathetic to the concerns expressed by the Petitioners. Those veterans, however, are not before the court in this case, and we are reluctant to enter relief substantively affecting those individual cases. The Petitioners, in their reply brief to this court, indicate their view that relief for such veterans may lie under 38 C.F.R. § 3.105(a) based on clear and unmistakable error. Whether that avenue for relief or relief pursuant to *Spencer v. Brown,* 17 F.3d 368 (Fed.Cir.1994), is available is not a matter on which we express any view. The Petitioners' prayer for injunctive relief that would directly affect other individual cases is denied.

■ The agency, at the conclusion of its brief, displays its awareness of the concerns raised by the Petitioners' prayer for injunctive relief. It suggests as ameliorative measures the "publication of additional regulations and guidelines, and appropriate outreach to convey the necessary information to the veteran community." The agency does not specify the content of any such regulations and guidelines, and we refrain from telling the agency what such regulations or guidelines should say.

On the subject of appropriate information outreach, we think it is necessary that veterans with pending or finally adjudicated claims under the diabetes regulation be notified in writing, in clear and unambiguous terms, that the true effective date of

the regulation is May 8, 2001. In addition, each such veteran must be further informed of the consequences to him or her, in terms of the effect on his or her claim for compensation, of the correct effective date. If such information is not conveyed in writing to each such veteran, there can be no assurance that veterans will be able to enjoy their entitlement to the correct effective date.

We thus accept the agency's suggestion that outreach to veterans on this issue is useful. To accommodate that suggestion, we hereby order the agency to give notice as described above to veterans with pending or adjudicated claims under the diabetes regulation. Such notice shall be given within 45 days of the date of this decision.

### IV

The Petitioners' request for correction of the effective date of the diabetes regulation is granted, the effective date being May 8, 2001. The agency is ordered to comply with the information outreach as specified above.

REMANDED.

RADER, Circuit Judge, concurring.

While fully concurring in this court's interpretation of the statutes, I question whether this court should order an agency to notify all potential claimants about this case within forty-five days.