**Slip Op. 03-10**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                        :
RHP BEARINGS LTD., NSK BEARINGS         :
EUROPE LTD. and NSK CORPORATION,        :
                                        :
        Plaintiffs,                     :
                                        :
        v.                              :
                                        :
UNITED STATES,                          :   Court No. 98-07-02526
                                        :
        Defendant,                      :
                                        :
        and                             :
                                        :
THE TORRINGTON COMPANY,                 :
                                        :
        Defendant-Intervenor.           :
_____:


[Commerce's <u>Remand Results</u> are affirmed. Case dismissed.]


        <u>Lipstein, Jaffe & Lawson L.L.P.</u> (<u>Robert A. Lipstein</u>, <u>Matthew
P. Jaffe</u> and <u>Grace W. Lawson</u>) for RHP Bearings Ltd., NSK Bearings
Europe Ltd. and NSK Corporation, plaintiffs.

        <u>Robert D. McCallum, Jr.</u>, Assistant Attorney General; <u>David M.
Cohen</u>, Director, Commercial Litigation Branch, Civil Division,
United States Department of Justice (<u>Lucius B. Lau</u>); <u>David R. Mason
Jr.</u>, Senior Attorney, Office of the Chief Counsel for Import
Administration, United States Department of Commerce, for the
United States, defendant.

        <u>Stewart and Stewart</u> (<u>Terence P. Stewart</u> and <u>Geert De Prest</u>)
for The Torrington Company, defendant-intervenor.


                                        Dated: January 28, 2003

**JUDGMENT**

## I.    Standard of Review

The Court will uphold Commerce's redetermination pursuant to the Court's remand unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

## II.   Background

On July 1, 2002, this Court issued an order directing the United States Department of Commerce, International Trade Administration ("Commerce"), to: (1) "explain its methodology for [the] calculation of constructed value profit . . . [;] and [(2)] explain why that methodology comported with statutory requirements." RHP Bearings Ltd. v. United States ("RHP Bearings III"), Ct. No. 98-07-02526, 2002 WL 1424571, at *1 (CIT July 1,

2002).  This order was mandated by the decision of the Court of Appeals for the Federal Circuit ("CAFC") in <u>RHP Bearings Ltd. v. United States</u> ("<u>RHP Bearings II</u>"), 288 F.3d 1334 (Fed. Cir. 2002), affirming-in-part, vacating-in-part, and remanding the judgment of this Court in <u>RHP Bearings Ltd. v. United States</u> ("<u>RHP Bearings I</u>"), 24 CIT ___, 120 F. Supp. 2d 1116 (2000).  The CAFC based its decision in <u>RHP Bearings II</u> on its prior holding in <u>SKF USA Inc. v. United States</u>, 263 F.3d 1369 (Fed. Cir. 2001).  The administrative determination at issue in <u>RHP Bearings I</u>, <u>RHP Bearings II</u>, and subject to the order of <u>RHP Bearings III</u> is entitled <u>Final Results of Antidumping Duty Administrative Reviews of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, and the United Kingdom</u> ("<u>Final Results</u>"), 63 Fed. Reg. 33,320 (June 18, 1998).

On September 30, 2002, Commerce, pursuant to this Court's order in <u>RHP Bearings III</u>, submitted its <u>Final Results of Redetermination Pursuant to Court Remand</u> ("<u>Remand Results</u>").  In particular, Commerce: (1) set forth the pertinent factual background of its (a) model-match process, and (b) constructed value ("CV") profit methodology; (2) explained its application of the term "foreign like product," in addition to addressing the contentions raised by RHP Bearings Ltd., NSK Bearings Europe Ltd. and NSK Corporation ("RHP-NSK") regarding this term; and (3)

explained why its CV profit methodology comports with statutory requirements.

On September 30, 2002, The Torrington Company ("Torrington") submitted comments on the draft results issued by Commerce identifying certain clerical errors that were corrected by Commerce in the final Remand Results. RHP-NSK also submitted comments on the draft results, which were addressed by Commerce in the Remand Results. RHP-NSK later submitted comments to this Court on November 6, 2002, see Comments of RHP-NSK on Remand Determination ("RHP-NSK's Comments"), and Torrington submitted rebuttal comments, see Rebuttal Comments of Torrington ("Torrington's Comments"), on November 27, 2002.

## III. Contentions of the Parties

RHP-NSK propose that this Court re-remand the CV profit issue to Commerce. According to RHP-NSK, Commerce failed to comply with RHP Bearings III because it did not supply the Court with a reasonable explanation regarding Commerce's use of differing definitions of the term "foreign like product" in its CV profit and normal value ("NV") price-based calculations.

Relying on the CAFC's holding in SKF USA, 263 F.3d at 1382-

83,[1] RHP-NSK argue that Commerce must explain its practice of defining the same term differently within the same antidumping proceeding. RHP-NSK urge the Court to dismiss any arguments relating to the legislative history of the term "foreign like product."[2] Additionally, RHP-NSK frame two issues that they claim must be decided by the Court: (1) whether the contemporaneity rule, under 19 U.S.C. § 1677b(a)(1)(A) (1994), is applicable to CV profit calculations, and (2) whether a legally acceptable application of the contemporaneity rule prevents Commerce's use of the preferred CV profit methodology under 19 U.S.C. § 1677b(e)(2)(A) (1994).[3]

---

[1]     The Court assumes that the correct case name to which RHP-NSK refer is <u>SKF USA Inc. v. United States</u>, 263 F.3d at 1369, and not <u>FAG Kugelfischer Georg Schafer AG v. United States</u>. Plaintiffs supply the correct pin cite, but incorrect case name.

[2]     The Court disagrees with RHP-NSK's argument because disregarding the legislative history of the antidumping statute would cripple the Court's ability to determine the reasonableness of Commerce's interpretation of the same statute. <u>See</u> <u>Timex V.I., Inc. v. United States</u>, 157 F.3d 879, 882 (Fed. Cir. 1998) (citations omitted).

[3]     To prove that Commerce violated the antidumping statute and that Commerce did not adhere to the order of <u>RHP Bearings III</u>, RHP-NSK attack the following two arguments made by Commerce in the <u>Remand Results</u>: (1) ". . . Congress did not intend the application of the preferred methodology to preclude application of the contemporaneity requirement of [19 U.S.C. § 1677b(a)(1)(A),]" <u>Remand Results</u> at 21; and (2)

> . . . [I]f [Commerce] were required to interpret and apply the term 'foreign like product' in precisely the same manner in the CV-profit context as in the price context, there would be no sales of the foreign like product upon which to base the CV-profit calculation. Accordingly, the preferred method of calculating CV profit established by Congress would become an

Addressing the first issue, RHP-NSK point to Commerce's statement in the <u>Remand Results</u> that "the contemporaneity provision of [19 U.S.C. § 1677b(a)(1)(A)] does not apply to CV[,]" <u>Remand Results</u> at 37, and argue that no section of Title 19 links the contemporaneity requirement to CV profit calculations. RHP-NSK further argue that Commerce's use of non-contemporaneous data, in other words data based on the full period of review ("POR") as opposed to only several months, in Commerce's CV profit computation serves as evidence that Commerce believes that the contemporaneity rule does not apply to cost-based calculations. RHP-NSK use this conclusion to argue that the <u>Remand Results</u> ultimately reveal an inconsistency in Commerce's logic because Commerce rejected data reported by RHP-NSK as non-contemporaneous while simultaneously including other non-contemporaneous sales in the CV profit calculation.[4]

---

inoperative provision of the statute.

<u>Id.</u> at 11.

[4] The first argument raised by RHP-NSK is not at issue since Commerce, at no time, claims that the contemporaneity rules applies specifically to the sales it considers when calculating CV profit. Instead, Commerce asserts that 19 U.S.C. § 1677b(a)(1)(A) is relevant to Commerce's "overall determination" of NV. Although the Court agrees that it would be anomalous to reject data as non-contemporaneous and then use other data that is itself non-contemporaneous in the same proceeding, Commerce adequately explains the relationship between its NV and CV profit calculating methodologies.

    While attacking Commerce's second statement, see supra note 3,
RHP-NSK further contend that substantial record evidence supports
the conclusion that the preferred methodology for calculating CV
profit under 19 U.S.C. § 1677b(e)(2)(A) is "fully operational" if
Commerce defines foreign like product in the same manner when
calculating CV profit and NV.  RHP-NSK proffer that Commerce should
use all the data provided to it by RHP-NSK, instead of applying the
contemporaneity rule, and utilizing sales which only extend from
three months prior to the month of the United States sale to two
months after the month of sale.  If Commerce cannot find the
necessary data to calculate CV under the preferred methodology by
extending the range of the data used, RHP-NSK propose that Commerce
calculate CV using one of the alternative methodologies listed
under 19 U.S.C. § 1677b(e)(2)(B) (1994).  Accordingly, RHP-NSK
argue that Commerce's explanation of its use of differing
definitions for the term "foreign like product" should be rejected.

    Torrington contends that RHP-NSK essentially misunderstands
Commerce's point regarding Commerce's use of contemporaneous sales
and urges the Court to disregard the alternative method for
calculating CV profit proposed by RHP-NSK.  Torrington finds the
arguments presented by RHP-NSK irrelevant, and states that "[t]he
question is not whether it is actually possible to calculate profit
for [CV] under the interpretation supported by [RHP-NSK]. Instead,

the question is whether Commerce's interpretation of . . . 19 U.S.C. § 1677b(e)(2)(A) is reasonable." Torrington's Comments at 3 (emphasis in original).

## IV.  Analysis

In RHP Bearings II, 288 F.3d at 1346, the CAFC summarized that Commerce, while calculating CV under 19 U.S.C. § 1677b(e)(2)(A) for the POR at issue, used aggregate data for all foreign like products rather than using "identical bearings and bearings of the same family," as it did for its calculation for NV.  In essence, RHP-NSK argued that this practice was "arbitrary and capricious" since Commerce failed to apply the same definition for the term "foreign like product" while calculating CV and NV for the same administrative proceeding.  See id.

In reaching its conclusion in RHP Bearings II, the CAFC adhered to its prior holding in SFK USA, 263 F.3d at 1382, stating that since Congress used the term "foreign like product" in various sections of the antidumping statute and specifically defines the term in 19 U.S.C. § 1677(16) (1994), it is

> presume[d] that Congress intended that the term have the same meaning in each of the pertinent sections or subsections of the statute, and . . . that Congress intended that Commerce, in defining the term, would define it consistently.  Without an explanation sufficient to rebut this presumption, Commerce cannot give the term "foreign like product" a different definition (at least in the same proceeding) when making

the [NV] price determination and in making the constructed value determination. This is particularly so because the two provisions are directed to the same calculation, namely, the computation of normal value (or its proxy, constructed value) of the subject merchandise.

The CAFC concluded that Commerce failed to explain its justification for the inconsistent use of the term "foreign like product" and outlined the explanation that Commerce must provide to properly rebut the presumption that Commerce cannot use differing definitions for an identical term in the same proceeding. See SKF USA, 263 F.3d at 1382-83. In accordance with the CAFC's decisions on this issue in SKF USA and RHP Bearings II, this Court ordered Commerce to explain its methodology for the calculation of CV profit and explain why the methodology comported with statutory requirements.

In the Remand Results, Commerce explained its unique model-matching methodology and reporting requirements of sales transactions used in Commerce's calculation of NV. Commerce explained that if it was "unable to find a sale of a comparison-market model made in the ordinary course of trade that is identical to or shares the family designation of the [United States] sale at a time reasonably corresponding to the time of the [United States] sale, [Commerce then] resort[s] to CV." Remand Results at 7. Commerce detailed its calculation of CV, which Commerce derived by adhering to 19 U.S.C. § 1677b(e), and later explained why Commerce

"interpreted and applied the statutory term 'foreign like product'
more narrowly in its [calculation of NV] than in its calculation of
[CV] . . . under [19 U.S.C. § 1677b(e)(2)(A) . . . ." <u>Id.</u> at 10.

According to Commerce, the preferred method for calculating
CV, found in 19 U.S.C. § 1677b(e)(2)(A), is to be used unless
"there are no home market sales of the foreign like product or
because all such sales are at below-cost prices."  <u>Id.</u> at 11
(citation omitted).  Commerce can use the preferred methodology
only if sales  of the foreign like product exist that are within
the ordinary course of trade.  <u>See</u> 19 U.S.C. § 1677b(e)(2)(A).
Title 19 of the United States Code and the Statement of
Administrative Action ("SAA")[5] establish that only when "<u>no</u> above-
cost sales [exist] in the ordinary course of trade in the foreign
market under consideration will Commerce [then] resort to [CV]."
SAA at 833 (emphasis in original).  Accordingly, Commerce argues
that if it were to use the same definition of the term "foreign

---

[5]     The SAA represents "an authoritative expression by the
Administration concerning its views regarding the interpretation
and application of the Uruguay Round agreements."  H.R. Doc. 103-
316, at 656 (1994), <u>reprinted in</u> 1994 U.S.C.C.A.N. 4040.  "[I]t is
the expectation of the Congress that future Administrations will
observe and apply the interpretations and commitments set out in
this Statement."  <u>Id.</u>; <u>see also</u> 19 U.S.C. § 3512(d) (1994) ("The
statement of administrative action approved by the Congress . . .
shall be regarded as an authoritative expression by the United
States concerning the interpretation and application of the Uruguay
Round Agreements and this Act in any judicial proceeding in which
a question arises concerning such interpretation or application").

like product" for the NV and CV profit calculations, it would eliminate all sales of the foreign like product upon which to base the CV profit calculation and would mandate that Commerce use one of the alternative methods listed under 19 U.S.C. § 1677b(e)(2)(B)(i) through (iii) to calculate CV. See Remand Results at 11; see also SKF USA, 263 F.3d at 1376-77. Commerce explained that this outcome is common in every situation where foreign like product is interpreted in the same manner for both price and CV profit determinations. See Remand Results at 12. Thus, "under a rigidly uniform interpretation of the term 'foreign like product,' the preferred methodology for calculating CV-profit would never be applied in any case." Id.

Commerce further explains that differing categories of merchandise can satisfy the meaning of the term "foreign like product," depending on the specific facts of each antidumping proceeding, and illustrates this point by explaining its usual practice of deriving different values, including NV. See id. 12-14. In determining the viability of a comparison market for NV under 19 U.S.C. § 1677b(a)(1)(C) (1994), Commerce adds that it normally employs the definition of the term "foreign like product" provided under § 1677(16)(C). See Remand Results at 15; Proposed Rule of Antidumping Duties; Countervailing Duties, 61 Fed. Reg. 7307, 7333 (Feb. 27, 1996). To find foreign like products that

would fit into the definition provided under § 1677(16)(A) (identical products versus products of the "same general class or kind"), and to use such products in its viability determination would require Commerce to perform a "product-specific matching analysis, and other analyses," requiring data not yet available to Commerce. See Remand Results at 15-16. The SAA makes clear that "Commerce must determine whether the home market is viable at an early stage in the [antidumping] proceeding to inform exporters which sales to report." SAA at 821. Commerce poses a similar argument when explaining its normal practice of calculating whether reasonable grounds to believe or suspect below cost sales exist under 19 U.S.C. § 1677b(b)(2)(A)(i) (1994), and adds that it defines the term "foreign like product" consistently in determining CV profits. See Remand Results at 20-25.

Contrary to the contentions espoused by RHP-NSK, the Court finds that the Remand Results provide sufficient explanation to rebut the presumption that Commerce cannot use differing definitions for an identical term in the same proceeding. Commerce adequately explained why the differing use of the same term is necessary to establish NV and CV profit in the same antidumping proceeding. Commerce set out the factual background of its calculations and provided the Court with an adequate and reasonable explanation of why the methodology at issue enables it to comply

with the statute on a whole.  Accordingly, Commerce followed the mandate of <u>RHP Bearings III</u>.

**V.    Conclusion**

The Court finds that Commerce sufficiently met its burden to explain why a differing definition of the term "foreign like product" is used in calculating NV and CV profit for RHP-NSK. Therefore, having reviewed the <u>Remand Results</u>, it is hereby

**ORDERED** that the <u>Remand Results</u> are affirmed in their entirety, and it is further

**ORDERED** that since all other issues have been decided, this case is dismissed.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated:     January 28, 2003
           New York, New York

## **Erratum**

Slip Opinion 03-10

<u>RHP Bearings Ltd. v. United States</u>, Court No. 98-07-02526

On page 2, the heading "**JUDGMENT**" should be replaced with the heading "**ORDER**".

February 5, 2003.