**Slip Op. 05-23**

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

_____

| | |
|---|---|
| Slater Steels Corporation, *et al.*, | : |
| Plaintiffs, | : |
| v. | : |
| United States, | : |
| Defendant. | : |

_____

| | |
|---|---|
| | : |
| Viraj Group, | : |
| Plaintiff, | : |
| v. | : |
| United States, | : |
| Defendants, | : |
| and | |
| Slater Steels Corporation, *et al.*, | : |
| Defendant-Intervenors. | |

_____ :

**Consol. Ct. No. 02-00551**

[Case remanded to the United States Department of Commerce.]

Decided:  February 17, 2005

*Collier Shannon Scott, PLLC,* (*Robin H. Gilbert*), for Plaintiffs and Defendant-Intervenors Slater Steels Corp., *et al.*

*John M. Gloninger and William H. Crow II*, Economic Consultants for Plaintiffs and Defendant-Intervenors.

*Miller & Chevalier Chartered*, (*Peter Koenig*), for Plaintiff Viraj Group.

*Peter D. Keisler*, Assistant Attorney General, United States Department of Justice, *David*

*M. Cohen*, Director, Commercial Litigation Branch, Civil Division, (*Jeanne E. Davidson*), Deputy Director, (*Stephen C. Tosini*), Attorney, Commercial Litigation Branch, Civil Division, *Christine J. Sohar,* Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for Defendant.

**OPINION**

BARZILAY, JUDGE:

**INTRODUCTION**

The court has twice remanded this case, directing Defendant, the United States Department of Commerce ("The Department," "Commerce" or "government"), to explain its interpretation and application of 19 C.F.R. § 351.401(f) (2000)[1] in collapsing three companies of the Viraj Group, an Indian importer. *See Slater Steels Corp. v. United States*, 27 CIT __, 279 F. Supp. 2d 1370 (2003) ("*Slater I*"); *Slater Steels Corp. v. United States*, Slip Op. 04-22, 28 CIT __, 316 F. Supp. 2d 1368 (2004) ("*Slater II*"). Commerce timely filed its Final Results of Redetermination ("*Remand Results II*"). Following the filing of *Remand Results II*, Plaintiffs requested that the court consider and apply its recent decision in *Carpenter Tech. Corp. v. United States*, Slip Op. 04-103 (Aquilino, Judge) (Aug. 16, 2004) ("*Carpenter*"), a related litigation

---

[1]The regulation provides:
(f) Treatment of affiliated producers in antidumping proceedings.
(1) In general. In an antidumping proceeding under this part, the Secretary will treat two or more affiliated producers as a single entity where those producers have production facilities for similar or identical products that *would not require substantial retooling of either facility in order to restructure manufacturing priorities* and the Secretary concludes that there is a significant potential for the manipulation of price and production.
19 C.F.R. § 351.401(f)(1) (emphasis added).

concerning the same companies of the Viraj Group, but addressing a challenge to a different period of review and involving different merchandise – stainless steel wire rod. Finding the *Carpenter* analysis persuasive, the court instructed Commerce to indicate what factual changes had occurred prior to the review at issue in this case, such that its decision to collapse the Viraj Group companies should not be remanded as it was in *Carpenter*. Defendant has submitted its answer to the court's inquiry, *see Mem. in Response to the Court's Letter*, Nov. 12, 2004 ("*Def.'s Response Mem.*"), and Plaintiffs and Defendant-Intervenors have submitted their response, *see Pls.'s Reply to Def.'s Mem. in Response to the Court's Letter*, Dec. 2, 2004 ("*Pls. Reply*").[2]

### BACKGROUND

In this consolidated action, Plaintiffs and Defendant-Intervenors, certain domestic companies, challenge Commerce's administrative decision to collapse the affiliated companies of the Viraj Group for the purpose of calculating a dumping margin against the imports of certain subject merchandise entered during the period of review ("POR") from February 1, 2000 through January 31, 2001 ("the 2000-2001 review"). Commerce determined to collapse the following affiliated companies of the Viraj Group: Viraj Alloys, Ltd. ("VAL"), Viraj Impoexpo, Ltd. ("VIL"), and Viraj Forgings, Ltd. ("VFL"). *See Final Results of Antidumping Duty Administrative Review*, 67 Fed. Reg. 45,956 (July 11, 2002), *amended by* 67 Fed. Reg. 53,336 (Aug. 15, 2002) ("*Final Results*"); *Issues and Decision Memorandum for the Final Results of the Administrative Review of Stainless Steel Bar from India* (July 5, 2002) ("*Decision Mem.*"). Commerce concluded that VAL, VIL, and VFL met the collapsing requirements of 19 C.F.R. §

---

[2]Viraj Group did not submit a response to the court's letter.

351.401(f), finding that "VAL and VIL can produce subject merchandise[3] (*i.e.*, similar or identical products) and can continue to do so, independently or under existing leasing agreements, without substantial retooling of their production facilities." *Decision Mem.*, cmt. 1. Commerce also found "a significant potential for the manipulation of price and production among VIL, VAL, and VFL." *Id.* As a collapsed entity, the Viraj Group received a *de minimis* dumping margin in the *Final Results*. Plaintiffs and Defendant-Intervenors, Slater Steels Corporation, Carpenter Technology Corporation, Electralloy Corporation, and Crucible Specialty Metals Division of Crucible Materials Corporation[4], challenged this determination as a misapplication of the collapsing regulation before the court.

In *Slater I* and *Slater II*, the court held that Commerce's decision to collapse the Viraj Group was not supported by substantial evidence on the record, remanding the Department's final results on both occasions.[5] Following Commerce's filing of *Remand Results II*, Plaintiffs requested that the court consider *Carpenter*, a related litigation concerning the same companies of the Viraj Group, but addressing a challenge to a different POR (from 1999 to 2000) and involving different merchandise – stainless steel wire rod. *See* Slip Op. 04-103. In *Carpenter*, the Court reviewed whether Commerce's decision to collapse the Viraj Group was supported by

---

[3]The subject merchandise in the POR at issue in this case is stainless steel bar, which included "articles of stainless steel in straight lengths that have been either hot-rolled, forged, turned, cold-drawn, cold-rolled or otherwise cold-finished, or ground, having a uniform solid cross section along their whole length in the shape of circles, segments of circles, ovals, rectangles (including squares), triangles, hexagons, octagons, or other polygons." *Final Results*, 67 Fed. Reg. at 45,957.

[4]In this consolidated action, these companies appear as both Plaintiffs and Defendant-Intervenors and will be referred to in this opinion as "Plaintiffs."

[5]Familiarity with *Slater I, Slater II* and *Carpenter* is presumed.

substantial evidence where Commerce, at a prior review (from 1997 to 1998)[6] involving the same subject merchandise, did not collapse the same companies. *See id.* at 9-10. Notably, that prior review was affirmed on appeal in *Viraj I*. *See Viraj I*, 25 CIT at 1031-32 (holding that Commerce's decision to value steel billets purchased by VIL from VAL based on the inter-company transfer price (paid by VIL to VAL) was supported by substantial evidence). The *Carpenter* decision relied on its finding in *Viraj I* that VAL and VIL had production facilities sufficiently different as to require substantial retooling of either facility in order to restructure manufacturing priorities. *See Carpenter*, Slip Op. 04-103, at 9. The Court found that the same difference between production facilities remained during the period under its review, even though Commerce was able to show that in the previous period of review VAL did not produce subject merchandise and VFL neither produced nor exported the merchandise. *Id.* The Court held that these changes were insufficient to support Commerce's reversal of its initial decision not to collapse, and the Court remanded to the agency for calculation and imposition of individual antidumping-duty margin upon VIL and VFL. *Id.* at 10.

In light of *Carpenter*, the court directed Commerce to indicate what, if any, factual changes have occurred prior to the period of review at issue in this action, such that its decision to collapse the Viraj Group companies should not be remanded as it was in *Carpenter*. Defendant filed its *Memorandum in Response to Court's Letter* and Plaintiffs filed their *Reply to Defendant's Memorandum.*

---

[6]*Stainless Steel Wire Rod from India; Final Results of Antidumping Duty Administrative Review*, 65 Red. Reg. 31,302 (May 17, 2000).

STANDARD OF REVIEW

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (2004). The court "must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" *Fujitsu General Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)). "In applying this standard, the court affirms [the agency's] factual determinations so long as they are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusions." *Olympia Indus., Inc. v. United States*, 22 CIT 387, 389, 7 F. Supp. 2d 997, 1000 (1998) (citing *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1563 (Fed. Cir. 1984)). The court may not re-weigh the evidence or substitute its own judgment for that of the agency. *See Granges Metallverken AB v. United States*, 13 CIT 471, 474, 716 F. Supp. 17, 21 (1989). Additionally, "absent a showing to the contrary, [the agency] is presumed to have considered all of the evidence in the record." *Nat'l Ass'n of Mirror Mfrs. v. United States*, 12 CIT 771, 779, 696 F. Supp. 642, 648 (1988).

DISCUSSION

I.      **History of Viraj's Participation in the Administrative Reviews**

VIL first participated in an antidumping duty review as a new shipper of stainless steel bar in 1995. *See, e.g., Notice of Initiation of New Shipper Antidumping Duty Administrative Review*, 60 Fed. Reg. 58,598 (Nov. 28, 1995) (concerning the POR from February 1, 1995 through July 31, 1995) (hereinafter "the new shipper review"). The new shipper review included the following information about the Viraj Group: (1) VAL possessed production facilities to produce stainless steel billets/rounds; (2) VIL possessed production facilities to produce bright

bar; and (3) VFL did not produce stainless steel bar during the period of review. *See VIL's*

*Responses to the Department of Commerce's Questionnaire for* ARP 2/1/95-7/31/95 (Public

Version) (hereinafter "New Shipper Questionnaire"). VIL specified that its own manufacturing

facilities included "bar manufacturing unit facilities for solution annealing, pickling, drawing,

turning, grinding, cutting, polishing and packing." *Id.* at 3. VIL's response described VAL as "a

steel manufacturing unit, including of stainless steel rounds and billets." *Id.* at 3. VIL stated that

"[t]he raw material used for the manufacture of bars [was] being received from [its] affiliated

sister company [VAL]." *Id.* at 26. The input materials from VAL were identified as "stainless

steel bars" and "stainless steel wire rods." *Id.* at 114-115. VIL noted that VFL produced and

sold stainless steel flanges and no other product. *Id.* at 4. VIL explained that the cost for input

raw materials obtained domestically was based on the "direct material cost of purchase plus

transportation costs." *Id.* at 29. Furthermore, the petitioners in the new shipper review asked

Commerce to consider VAL as a respondent in the review pinpointing VIL's reported purchases

of stainless steel bars from VAL. *See Letter to the Secretary of Commerce from Viraj Impoexpo*

*Ltd,* Mar. 27, 1996.

In the 1998-1999 administrative review that followed the first shipper review, VIL's

responses identified the same principal facts:

1) VAL produces raw materials (i.e., stainless steel bars for stainless steel bright bars,

*VIL's Questionnaire Responses*, June 4, 1999, at 8 ("1998-1999 *Questionnaire*");

2) VIL manufactures stainless steel bright bars, *id.* at 118, purchasing hot rolled bars from

VAL, *VIL's Responses to Supplemental Questionnaire*, Feb. 10, 2000, para. [15];

3) VFL manufactures stainless steel pipe fittings, i.e. flanges, 1998-1999 *Questionnaire*,

at 118.

During the 1998-1999 review, VIL initially reported only its sales of bright bar to the United States. *Stainless Steel Bar from India; Preliminary Results of Antidumping Duty Administrative Review and New Shipper Review and Partial Recession of Administrative Review,* 65 Fed. Reg. 12209, at 12210-11 (Mar. 8, 2000). Upon Commerce's request to update its database, VIL reported that its affiliate VAL also had home market sales of stainless steel bar, which were sales of black bar, during the period of review. *Def. Response Mem.*, at 7 (citing 65 Fed. Reg. at 12210-11.) The narrative description of this information was submitted after an administrative deadline and was therefore rejected by Commerce. *See* 65 Fed. Reg. at 12210. As a result, Commerce found that all the information submitted by VIL was incomplete and preliminarily decided to apply adverse facts available assigning a margin of 21.02 to VIL. *Id.* Ultimately, however, Commerce revised its decision and applied "partial facts" submitted by VIL to calculate VIL's margin. *See Stainless Steel Bar from India; Final Results of Antidumping Duty Administrative Review and New Shipper Review and Partial Rescission of Administrative Review,* 65 Fed. Reg. 48965, 48966-67 (Aug. 10, 2000) (calculating normal value based on the company's sales to a third country market as facts available); *see also Issues and Decision Memorandum for the Administrative Review and New Shipper Review of the Antidumping Duty Order on Stainless Steel Bar from India February 1, 1998 through January 31, 1999*, cmt. 4 (explaining that VIL's "responses are sufficiently complete to serve as a reliable basis for reaching a determination without creating undue difficulties" and deciding to use facts otherwise available only "with respect to choosing the appropriate comparison market as a basis for normal value and when determining margins for U.S. sales that do not have identical matches.").

## II.     The Current Administrative Review

In light of the *Carpenter* decision, the court's inquiry is whether Commerce's decision to collapse the Viraj Group companies, VAL, VIL and VFL for the POR from February 1, 2000 to January 31, 2001, is consistent with its previous determinations, in which Commerce did not collapse the same companies involving the entry of the same subject merchandise.

Consistency is a cornerstone of administrative action. *See, e.g., Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944) (The level of deference afforded an agency's action "will depend upon . . . its consistency with earlier and later pronouncements.") The Court has recognized the "importance of consistency across [antidumping] reviews [as] inferred from the rationale outlined in the promulgating regulations pursuant to the Uruguay Round Agreements Act." *See Hynix Semiconductors, Inc. v. United States*, 27 CIT __, __, 248 F. Supp. 2d 1297, 1304 (2003). Commerce may reach different determinations in separate administrative reviews, but it must either employ the same methodology or give reasons for changing its practice. *Cinsa, S.A. de C.V. v. United States*, 21 CIT 341, 349, 966 F. Supp. 1230, 1238 (1997) (involving a challenge to Commerce's method of calculation of cost of production and constructed value). "It is 'a general rule that an agency must either conform itself to its prior decisions or explain the reasons for its departure . . . .'" *Hussey Cooper, Ltd. v. United States*, 17 CIT 993, 997, 834 F. Supp. 413, 418 (1993) (citations omitted). When Commerce departs from its prior decision, it must provide a reasoned explanation for its departure in order for the court to judge the consistency of the administrative action. *Id.* at 998, 834 F. Supp. at 419; *see RHP Bearings Ltd. v. United States*, 24 CIT 1218, 120 F. Supp. 2d 1116, 1124 (2000) *aff'd in part and vacated in part*, 288 F. 3d 1334, 1337 (Fed. Cir. 2002) (vacating the CIT decision sustaining

Commerce's calculation of the profit component of constructed value and remanding the case for further proceedings) ("Commerce is under an obligation to explain the apparent inconsistency of its approach in [the present] review and the two preceding reviews.")

The period of review at issue in this action is not the first instance where Commerce had the information to consider the applicability of the collapsing regulation to the Viraj Group's stainless steel bar production. Commerce claims that VIL was only reviewed once before the review at issue in this case and that collapsing the Viraj Group companies was not an issue previously. *Def.'s Response Mem.*, at 7. Notably, Commerce claims that during the 2000-2001 review, it established for the first time that:

> (1) VAL possessed production facilities to produce stainless steel bar (black bar) that was sold in the home market during the period of review; (2) VIL possessed production facilities to produce bright bar that was sold in the United States market during the period of review; and (3) VFL had production facilities that were similar to VIL's production facilities that could be used to produce stainless steel bar, but VFL itself did not produce stainless steel bar during the period of review.

*Id.* at 8. This contention is misleading. In its *Final Determination, Remand Results I*, and *Remand Results II*, Commerce focused on the following facts as forming the basis of its decision to collapse: (1) VAL has production facilities for making steel billets and black bar[7]; (2) VIL has the capabilities to further process the black bar into bright bar (cold-finished bar), but VIL cannot produce black bar on its own; (3) VFL's primary production operation relates to producing stainless steel flanges, and VFL's production facilities are similar to those of VIL, but not VAL.

---

[7]These bar production facilities are the production facilities that Commerce found to overlap with VIL and VFL's production operations "because they are related to bar production and *not* billet making." *Remand Results II*, at 18.

*See e.g., Remand Results II*, at 12-13. The same principal facts could be gleaned from the information supplied by VIL in the previous two administrative reviews. *See infra* Part I, *History of Viraj's Participation in the Administrative Reviews.* Thus, Commerce had the same principal information during the previous administrative reviews that established that the production facilities of each Viraj Group company possessed the capability to produce stainless steel bar. The additional findings identified by Commerce in the 2000-2001 review are that VAL sold black bar in the home market and that VFL had production facilities that were similar to VIL's production facilities that could be used to produce stainless steel bar. Commerce did not explain how these additional findings were material or decisive in establishing a sufficient basis for collapsing that did not exist during the previous administrative reviews.

Furthermore, as argued by Plaintiffs, Commerce made an affirmative decision not to collapse VAL, VIL, and VFL during the first shipper review and the 1998-1999 review. *Pls. Reply*, at 5-6. Thus, Commerce's acceptance of the cost of production data for the subject merchandise based on the price VAL charged VIL for hot-rolled stainless steel bar reveals the agency's decision to treat VAL and VIL as separate entities and to accept the prices paid by VIL to VAL for raw materials as an accurate representation of costs incurred in producing the subject merchandise. *See, e.g., New Shipper Questionnaire*, at 29. In other words, Commerce's treatment of VAL as a supplier of raw materials independent of VIL indicated that Commerce at that time affirmatively chose not to collapse VAL and VIL.

Aside from a more developed record of its factual findings, Commerce did not present evidence of material factual changes relevant to the collapsing issue since the 1998-1999 review. Whereas the principal facts have remained the same since the previous two administrative

reviews, Commerce's analysis of the Viraj Group companies in the 2000-2001 review differed from its previous determinations. When the Department collapsed the companies in the 2000-2001 review, it departed from its previous application of the antidumping regulations. Although Commerce provided some explanation for its different determination, it is not adequate to support the imposition of an inconsistent result in this case. Commerce argues that the current review differs from the 1998-1999 review in that Commerce considered the issue of collapsing the Viraj Group companies from the beginning of this review since VIL reported sales information for the entire Viraj Group. *Def. Response Mem.*, at 8. Commerce buttresses its argument pinpointing that in the 1998-1999 review Commerce applied only partial facts available to Viraj's margin calculation because VIL failed to timely submit the narrative description of the home market sales of black bar sold by VAL during that period of review. *Id.* at 7. Commerce, however, failed to explain how VIL's reporting of sales information for the *entire* Viraj Group was necessary for Commerce's consideration of collapsing in the current review. Likewise, Commerce failed to explain how the lack of a narrative description regarding the home market sales of black bar precluded consideration of the collapsing issue. Without an adequate explanation, Commerce cannot reverse its prior practice. *See, e.g., Cinsa, S.A. de C.V.*, 21 CIT at 349. Therefore, Commerce's departure from its prior decision not to collapse VAL, VIL and VFL is not warranted in this case.

It should be noted that this case is distinguishable from *Carpenter* because the *Carpenter* decision was informed by the Court's previous holding affirming Commerce's determination not to collapse the Viraj Group companies in an earlier period of review. This distinction, however, does not vitiate the essential basis for the court's decision in this case: that Commerce may not

depart from its prior practice without a change in material facts or a reasoned explanation for its departure. *Cf. Carpenter*, Slip. Op. 04-103, at 9. While there is no preceding CIT decision involving the collapsing issue in the 1998-1999 review, the record provides sufficient information to distill the principal facts that informed Commerce's decision not to collapse the companies in the previous administrative reviews.

This conclusion obviates the need to address the merits of Commerce's *Remand Results II*, especially since they do not bring to light significant facts or findings establishing a basis for a change in Commerce's approach in this case. It should be noted, however, that the government's latest explanation of its methodology further supports the above conclusion. Collapsing involves treating a group of affiliated producers as a single entity for the calculation of dumping margins. *See* 19 U.S.C. § 1677(33) (2004). In pertinent part, the collapsing regulation requires Commerce to determine that the companies "have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities," and that "there is a significant potential for the manipulation of price or production." 19 C.F.R. § 351.401(f)(1). Essentially, Commerce interprets the substantial retooling prong of this regulation as merely requiring a unilateral analysis of a potential shift in manufacturing priorities[8] as long as there is a certain overlap in the production of similar or identical

---

[8]In other words, Commerce explains that it is sufficient to determine whether VAL can produce bright bar without substantial retooling, but not necessary to also determine that VIL can produce stainless steel black bars. *Remand Results II.* In *Slater II,* the court instructed Commerce to explain why it need not examine the production facilities of each company involved in collapsing and why it need not address the possibility of shifting production among companies in either direction. Slip Op. 04-22, at 11.

merchandise by the companies.[9] *Remand Results II*, at 10-13.  Thus, Commerce argues that the

Viraj Group companies have production facilities for production of stainless steel bar, and that

there is an overlap in their production of stainless steel bar as their production facilities "converge

with respect to the [stainless steel bar]." *See Remand Results II*, at 10-11.  Commerce, however,

does not provide an explanation regarding its method of determining the sufficiency of such an

overlap in the production of similar or identical merchandise, and it does not appear from the

record that a greater overlap sprang into existence in the 2000-2001 review since the first shipper

review and the 1998-1999 review.  The court notes that the government had an opportunity to

demonstrate any factual changes in the production overlap from the prior administrative review,

and that the government instead insisted that the 2000-2001 review was the first instance where

Commerce had enough information to make its decision to collapse the companies.

---

[9]The court also notes inconsistency in Commerce's interpretation and application of 19 C.F.R. § 351.401(f)(1).  While Commerce contends that the unilateral analysis of the substantial retooling prong is a reasonable interpretation of its regulation, in another stainless steel bar case, for example, involving the German companies EWK and KEP, Commerce noted the companies had production facilities that could produce similar and identical merchandise in a certain limited range of sizes without requiring substantial retooling. *Final Determination of Sales at Less Than Fair Value: Stainless Steel Bar from Germany*, 67 Fed. Reg. 3159 (Jan. 23, 2002).  In addition, Commerce took into account that either of the two companies could outsource a portion of the production process to the other company for some sizes outside that limited range. *Id.* Nonetheless, Commerce concluded that the limited overlap of the companies' production capabilities for identical products and "the significant impediments to expanding this overlap, in concert with . . .  the lack of any significant intertwining of the operations of the two firms," were insufficient reasons to collapse the companies. *Id.*  This reasoning deviates from the Department's interpretation that "its regulation does not require that each affiliated company produce the products that the other company produces before finding the potential for manipulation of shifting production priorities." *Remand Results II*, at 15.

CONCLUSION

Commerce cannot, without an adequate explanation or a material change in facts, impose an inconsistent result. Commerce has neither demonstrated how certain additional findings during the 2000-2001 review were material or decisive to its determination to collapse nor furnished adequate explanation for departing from its previous decision not to collapse VAL, VIL and VFL to warrant its decision to collapse the Viraj Group companies in the 2000-2001 review. In this case, Commerce's reversal of its prior practice is inconsistent with core administrative law principles. Consequently, Plaintiffs' motion for judgment must be granted, and this matter is remanded to Commerce for calculation and imposition of individual antidumping margins upon VAL, VIL and VFL. However, the court notes that Plaintiffs in this case have not objected to the potential collapse of VIL and VFL, "as these companies have similar functions for finishing VAL inputs." *Pls. Reply*, at 9 n.4. Therefore, on remand, Commerce may consider collapsing VIL and VFL in accordance with the court's opinions in *Slater I* and *Slater II*.


February 17, 2005                                   /s/ Judith M. Barzilay
Dated : _____        _____
New York, New York                                Judith M. Barzilay